HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| L. S.,<br><br>  Plaintiff,<br><br>  v.<br><br>TACOMA SCHOOL DISTRICT,<br><br>  Defendant. | CASE NO. 3:13-cv-5240-RBL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[DKT. #29] |

THIS MATTER is before the Court on Defendant Tacoma School District's Motion for Summary Judgment (Dkt. #29). Plaintiff L.S. alleges that a classmate, F.W., stalked and then raped her in a bathroom while she was attending Mount Tahoma High School. L.S. claims that the School District knew F.W. posed a threat to her, yet failed to prevent the rape. L.S. brings claims against the School District for discrimination under Title IX, 20 U.S.C. § 1681(a)), and for negligence. The School District moves for Summary Judgment, claiming L.S. has not established actionable harassment under Title IX and that the School District's actions (or omissions) were

reasonable under the circumstances.[1] Because material questions of fact preclude summary judgment, the School District's Motion for Summary Judgment is DENIED.

## I.   BACKGROUND

L.S. attended Mount Tahoma High School in Tacoma. During her senior year, she befriended F.W. They both have cognitive impairments, so they attended special education classes. L.S. spent time with F.W. at school and outside of school. The two visited each other's houses, talked on the phone, and sent each other text messages.

F.W.'s behavior toward L.S. began to change during the year. Around January 2012, F.W. became increasingly infatuated with L.S. and wanted to be around her as much as possible. Even their special education teachers noticed. One teacher described F.W.'s behavior as taking it "a little far," and that F.W. was "calling [L.S.] too much when she said not to and going over to the house when she said not to." L.S. complained to her teachers about this new unwanted attention.

Another teacher noticed that F.W.'s infatuation had made L.S. emotional on at least one occasion and she showed up to class crying. F.W. would leave his own classes and come to L.S.'s classes, or watch her through a window. Teachers were concerned and took steps to prevent F.W. from contacting L.S. A paraeducator would escort one of the two students in between classes so their paths would not cross. That winter, F.W. and F.W.'s parents met with his teachers to discuss his behavior. At the conference, the teachers told F.W. to stop calling L.S.

---

[1] TSD also moves to strike several portions of L.S.'s counsel's declarations offered in response to the Motion. Most of the claimed inconsistencies have little bearing on the outcome of this Motion, and in any case the Court takes the facts in the light most favorable to the non-moving party.

In March, F.W. threatened another classmate who he believed L.S. was dating. The administration suspended F.W. for one day. Terry Thayer, one of the students' teachers, was particularly concerned. She emailed Assistant Principal Robert Cooper about the incident. She wrote that F.W. was "VERY jealous" and had a "fatal attraction" to L.S. Thayer also told Cooper that several students had told her that F.W. groped L.S. on more than one occasion (behavior she described as "harassment").

Principal Paul Colgan met with L.S. the next day.  L.S. told Colgan that she was concerned about F.W. That day, Thayer emailed F.W.'s other teachers, telling them that under no circumstances should F.W. and L.S. be together unsupervised: "Please ***DO not allow*** [F.W.] to leave your room. . . . He is obsessed with a girl and more time than not he is . . . following/watching her." Dkt. #35, Ex. B (emphasis in original).

On March 16, 2012, F.W. allegedly sent L.S. text messages stating "It's gonna happen!" throughout the day.² L.S. complained about it to her teacher. Later in the day, L.S. and F.W. were both in Thayer's sixth period class. F.W. was supposed to be in another class, but he had decided to attend class with L.S. instead. At some point, Thayer excused L.S. to use the restroom and L.S. left the classroom, unattended. While L.S. was out of the room, Thayer noticed that F.W. had also left the room. When L.S. was leaving the girls' bathroom, F.W. allegedly dragged her into the boys' bathroom and forcibly raped her. The administration "emergency expelled" F.W. and the police investigated.

L.S. sued the School District, claiming that Mount Tahoma should have known F.W. might harm her and that it did not do enough to prevent the alleged rape. The School District moves for summary judgment, arguing (1) that L.S. did not establish a prima facie Title IX

---

² L.S. later destroyed her cell phone so there is no proof of this.

1  harassment claim, and (2) that the School District was not negligent because its acts (or

2  omissions) regarding L.S. and F.W. were reasonable under the circumstances.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Peer-to-Peer Harassment Under Title IX

L.S. claims that the School District's inaction subjected her to preventable stalking, harassment, and assault, and that as a result she was no longer able to function in school. The School District claims that it is entitled to summary judgment because L.S. has not shown that the harassment was severe and pervasive, that she was deprived of educational opportunities, or that the school knew about the harassment and yet failed to prevent it.

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A school district that receives federal funds may be liable if it knows about and fails to prevent peer-to-peer harassment, even if the school's employees are not the perpetrators. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (quoting *Davis v. Monroe County Board of Education,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)). To prevail under Title IX for peer-to-peer sexual harassment, a plaintiff must establish that: (1) the school district "exercise[d] substantial control over both the harasser and the context in which the known harassment [occurred];" (2) the harassment was so "so severe, pervasive, and objectively offensive" that it deprived the plaintiff of the educational opportunity or benefits of the institution; (3) the school district had "actual knowledge" of the harassment; and (4) the school district's "deliberate indifference" subjected the plaintiff to the harassment. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (citing *Davis*, 119 S.Ct. at 1672-75). The School District concedes that it exercised control over F.W. and the context in which the harassment occurred.  *See* Dkt. #29.

          **1.**      **A reasonable jury could conclude that F.W.'s behavior was severe and pervasive and that it deprived L.S. of educational opportunity.**

The School District argues that, as a matter of law, L.S. did not suffer such severe harassment that she was deprived of educational opportunities. It claims that the relationship between L.S. and F.W. was "amorphous" and the teenagers were still learning the boundaries of adult behavior. The School District also claims that after the harassment and alleged rape, L.S.'s grades actually improved. L.S. responds that F.W.'s behavior was far more serious than merely immature courtship—it violated the School District's harassment policies and was serious enough that the teachers attempted to keep the two students separate.

A school district can be liable for damages from harassment under Title IX if the harassment is so "severe, pervasive, and objectively offensive" that it deprives the victim of educational opportunities or benefits provided by the school. *Davis*, 119 S. Ct. at 1675. The *Davis* Court noted that "[c]ourts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable for adults." *Id.* The School District is entitled to summary judgment only if no reasonable jury could conclude that F.W.'s behavior was severe enough to deprive L.S. of educational opportunity. *See Triton Energy*, 68 F.3d at 1220.

L.S. would sometimes be emotional and cry in class because of interactions with F.W. L.S.'s teacher testified that her relationship with F.W. was "very disruptive to [L.S.'s] education and the education of others." *See* Dkt. #34 at 17. F.W. would leave class to watch L.S. through a window while she was in class. L.S. and F.W.'s relationship was not only outwardly disruptive, but it also bothered L.S. enough that she complained to teachers and the administration about it. L.S. claims F.W.'s actions caused her severe emotional distress.

The interactions between L.S. and F.W. caused ongoing problems both inside and outside of the classroom. L.S. has presented evidence that F.W.'s behavior was more serious than mere immature flirting and unwanted affection. Whether it was "severe and pervasive," and whether it deprived L.S. of educational opportunity as a result, are questions for the jury.

### 2. A reasonable jury could conclude that the school had "actual knowledge" of the harassment.

The School District argues that although L.S. told administrators about concerns she had with F.W.'s behavior prior to the alleged rape, the School District did not have "actual knowledge" for Title IX purposes. The School District also argues that teachers and paraeducators do not have authority to address the alleged discrimination; therefore, nothing L.S.

said to them may be considered "actual knowledge." L.S. responds that the Ninth Circuit has not yet drawn a bright line test for "actual knowledge," and that the special education teachers had plenty of authority and ability to address the harassment—in fact, L.S. argues, they did address the harassment, albeit with varying effectiveness.

A school district is liable for damages for harassment under Title IX only where it has "actual knowledge" of the harassment. *Davis,* 119 S.Ct. at 1675. Damages may not be recovered unless an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination." *Gebser v. Lago Vista Indep. Sch. Dist*, 524 U.S. 274, 284, 118 S.Ct. 1989, 1996, 141 L.Ed.2d 277 (1998). In other words, the district is liable only for failure to address known harassment, not for the harassment itself. *See Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010). Circuits differ as to the boundaries of the "actual knowledge" component of a Title IX claim. "Although the actual knowledge standard has been applied repeatedly by courts since [*Gebser*], its contours have yet to be fully defined." *Doe A. v. Green,* 298 F.Supp.2d 1025, 1034 (D.Nev.2004). "It is difficult to define what kind of notice is sufficient." *Tesoriero v. Syosset Cent. Sch. Dist.,* 382 F.Supp.2d 387, 397 (E.D.N.Y.2005) (citation omitted). *See also Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F.Supp.2d 1008, 1029 (E.D. Cal. 2009) (holding that whether a football coach was an appropriate official was a factual determination).

The School District appears to argue that teachers and paraeducators are per se excluded from the class of school employees with "authority to address the alleged discrimination and to institute corrective measures." This argument is overly simplistic and unsupported by case law from this circuit. Teachers in the special education program at the school took responsibility for some students even when they were not in the respective teachers' classrooms. A paraeducator

escorted L.S. between classes; Thayer emailed F.W.'s other teachers, asking them to keep him away from L.S; and one of F.W.'s teachers even set up a parent-teacher conference. While assistant principals may have had the sole authority to issue *formal* discipline or written corrective plans, a jury could find that the teachers and paraeducators had enough authority and ability to prevent contact between L.S. and F.W. And eventually, L.S. and her teachers *did* bring their concerns about F.W. to the administration, which determined that F.W. did not pose a violent threat to L.S. Whether this was sufficient to constitute "actual knowledge" for Title IX purposes is a question for the jury.

### 3. Because "deliberate indifference" depends on other material questions of fact, summary judgment on that issue is improper.

The School District argues that higher-level administrators did not know of the "fickle" relationship between L.S. and F.W. for much of it existence, and when they did find out about it, their response to L.S.'s "vague complaints" was appropriate. L.S. argues that teachers and administrators knew that F.W. was a potential threat to L.S., and their inaction was unreasonable.

A school is not liable for peer-to-peer harassment "unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis,* 119 S.Ct. at 1672 (internal quotation marks and citations omitted). "[D]eliberate indifference" occurs when the school's "response . . . or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 1674. Summary judgment is inappropriate if the plaintiff has alleged specific facts that show that the school district arguably acted with deliberate indifference. *See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003).

It is not "Monday morning quarterbacking," as the School District contends, to inquire whether the school's response to L.S.'s complaints about F.W. was reasonable. If school

employees knew about F.W.'s increasingly troubling behavior, questioning the timeliness and adequacy of its response is not the same as merely saying "the school should have done something more." In this case the "deliberate indifference" component involves first determining which school employees had sufficient authority to satisfy the "actual knowledge" component and whether, or at what point, F.W.'s behavior was actionable harassment. These questions preclude summary judgment.

### C. Negligence

The parties dispute the scope of the School District's duty to L.S. and whether the School District was the proximate cause of L.S.'s harm. The School District claims that L.S. has not shown that the alleged assault was reasonably foreseeable or proximately caused by the School District. L.S. responds that school staff and administration were aware of F.W.'s infatuation with L.S., and that the alleged rape was a foreseeable result of allowing L.S. and F.W. to be together unsupervised.

A school district's duty to protect its students from reasonably anticipated dangers is well-established. *Christensen v. Royal Sch. Dist. No. 160,* 156 Wn.2d 62, 70, 124 P.3d 283 (2005); *Niece v. Elmview Group Home,* 131 Wn.2d 39, 44, 929 P.2d 420 (1997). Specifically, a school district has a duty to protect its students from foreseeable harm by other students, teachers, and third parties. *Peck v. Siau,* 65 Wn. App. 285, 293, 827 P.2d 1108 (1992). Foreseeability depends on whether the particular harm falls "within the general field of danger covered by the specific duty owed by the defendant." *J.N. v. Bellingham Sch. Dist. No. 501*, 74 Wn. App. 49, 57, 871 P.2d 1106 (1994) (citing *Maltman v. Sauer,* 84 Wn.2d 975, 981, 530 P.2d 254 (1975). Foreseeability is normally an issue for the jury. *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989).

F.W.'s teachers did not necessarily think that he was a violent person, but they had enough concern about his behavior toward L.S. that they took significant steps to keep him away from her. Thayer emailed F.W.'s other teachers to instruct that they not let him leave the room because he would find L.S. and watch her or follow her. A paraeducator escorted L.S. to keep her away from F.W. Teachers even involved F.W.'s parents. And the administration, which suspended F.W. when he threatened a student he believed was dating L.S., knew that F.W. was capable of expressing his emotions inappropriately.

Viewing the facts in the light most favorable to L.S., a reasonable jury could conclude that the alleged rape was foreseeable and that the School District's inaction was a proximate cause.

### III.   CONCLUSION

L.S. has established a prima facie discrimination case under Title IX. She has shown that school staff knew that F.W. was infatuated with her, thought the relationship was unhealthy, and tried to keep the two students apart; that she was emotionally impacted by F.W.'s attention; and that she suffered as a result. The School District's Motion for Summary Judgment on the Title IX claim is DENIED.

A reasonable jury could conclude that the alleged rape was foreseeable and was proximately caused by the school's failure to keep F.W. away from L.S. The School District's Motion for Summary Judgment on the negligence claim is also DENIED.  IT IS SO ORDERED.

Dated this 18th day of April, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE